668 A.2d 478

GREGORY PARK COOPERATIVE CORPORATION, PLAINTIFF–APPELLANT, v. CROWN PARKING CORPORATION, 280 GREGORY CORPORATION AND PMC MANAGEMENT OF N.Y., INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 30, 1995—Decided December 27, 1995.

Before Judges PETRELLA and PAUL G. LEVY.

*Clifford B. Frish* argued the cause for appellant . (*Michael O'Connor*, on the brief).

*Gary F. Werner* argued the cause for respondents (*Crummy, Del Deo, Dolan, Griffinger & Vecchione*, attorneys; *Mr. Werner* and *Carole White–Conner*, on the brief).

The opinion of the Court was delivered by

PAUL G. LEVY, J.A.D.

Plaintiff brought this action to recover unpaid rent for a parking lot it had leased to defendants, located in a redevelopment area of Jersey City. Defendants or their assignees had operated a commercial parking lot on the site for the entire five year term of the lease and the succeeding twelve months. On a motion for summary judgment, the judge ruled that the lease was void *ab initio* because it had never been approved by the local redevelopment agency. Plaintiff's claim for $506,427 was dismissed and plaintiff was ordered to return $30,000 previously paid by defendants as additional rent. We reverse.

Plaintiff owned Gregory Park, a tract of land in Jersey City with two large residential towers, an adjoining mall with commercial rental units and a parking lot. Plaintiff agreed to lease the parking lot to defendant Crown Parking Corporation ("Crown") for a term running from May 1, 1985 to April 30, 1990; the agreed rent was $150,000 per year as base rent with defendant to pay "all real estate taxes, assessments, . . . and other governmental levies and charges" as additional rent. Crown assigned its interest to

co-defendant, 280 Gregory Corporation [1] ("the tenant"), which operated a commercial parking lot on the site for six years, the last twelve months as a holdover month-to-month tenant.

During the five-year term of the lease, the tenant faithfully paid the base rent each month. For the first three years, plaintiff did not bill for property taxes which amounted to $8,736 for the last half of 1985, $20,744 for 1986 and $23,744 for 1987. In 1988 the property was reassessed and the annual taxes jumped to $193,545. At that point plaintiff and the tenant began to negotiate an amendment to the lease terms. During those negotiations, the tenant paid $30,000 in November 1988 in partial satisfaction of past due taxes and continued to pay the monthly base rent. The lease was never amended.

After the term ended, the tenant continued to pay the base rent monthly but failed to pay anything for September and October 1990. Plaintiff brought an action for unpaid rent which was soon settled. The tenant continued to pay the monthly base rent until February 1991 and paid nothing thereafter. This action was filed when the arrears reached three months. Plaintiff alleged that $54,249 was due for unpaid base rent and $452,178 for unpaid taxes for the term of the lease and the holdover period when the tenant continued to use and occupy the premises. Defendants responded by denying the validity of the lease for failure to satisfy a mandatory condition precedent, and by asserting a counterclaim against plaintiff for misrepresentation regarding the $30,000 paid as additional rent for real estate taxes.

After completion of discovery, defendants moved for partial summary judgment on the complaint, claiming there was a constitutional and statutory requirement that the lease was contingent on approval of the JCRA and that plaintiff knew this was an absolute prerequisite to the validity of the lease. Plaintiff's response was based on theories of laches, waiver, estoppel and

---

[1] Apparently Crown occupied the site for less than three months at the inception of the relationship; PMC did not use the site.

unjust enrichment. Bypassing these fact intensive issues, the judge observed that "the complaint relies completely and exclusively on the lease agreement." He found that "the agreement is unenforceable because Gregory Park [lacked] the original capacity to enter into this lease without the prior written consent of the Jersey City Redevelopment Agency pursuant to the State Constitution and statutes," and granted partial summary judgment to defendants, dismissing the complaint. Defendants moved for summary judgment on their counterclaim, the only remaining pleading. They contended that the $30,000 payment made as additional rent for taxes should be returned because the lease upon which it was based was void *ab initio.* No opposing papers were filed and "final" summary judgment was granted for $30,000 plus prejudgment interest, "premised upon the same findings of fact and conclusions of law" as those supporting the earlier ruling for partial summary judgment.

The Redevelopment Agency Law (RAL) was in force during the entire time the tenant operated the parking lot.[2] The Gregory Project Area Redevelopment Plan, enacted in 1952, required prior written consent of the Jersey City Redevelopment Agency ("JCRA") for all leases, and the lease between plaintiff and Crown specifies that "this Lease is contingent upon such approval by the Jersey City Redevelopment Agency." The parties stipulated that the approval was not procured. Nevertheless, first Crown and then the tenant took possession of the site and operated the parking lot for the term of the lease and one additional year.

The RAL was the legislative scheme governing "the acquisition, clearance, planning, reconstruction and redevelopment" of areas of a community deemed "blighted" in order to "promote the public health, safety, morals and welfare, stimulate the proper growth of urban, suburban and rural areas of the State, preserve existing values and maintain taxable values of properties within or contigu-

---

[2] *N.J.S.A.* 40:55C–1 to –39 was repealed by *L.* 1992, *c.* 79, § 59 and *N.J.S.A.* 40:55C–40 to –108 was repealed by *L.* 1991, *c.* 431, § 20, eff. April 17, 1992.

ous to such areas, and encourage the sound growth of communities." *N.J.S.A.* 40:55C–2. Redevelopment agencies, such as the JCRA, were to be created as governmental agencies to administer the development of the involved areas. The parking lot which defendants operated was a development contemplated by the Gregory Project Area Redevelopment Plan. *N.J.S.A.* 40:55C–20 required that any agreement between the agency and the redeveloper contain (1) a covenant running with the land requiring any improvements "shall only be used for the purposes designated in the redevelopment plan" and (2) a provision that the redeveloper lacked power to lease any part of the redevelopment area "without the prior written consent of the agency."

Defendants never contended the parking lot was not a permitted use under the plan, and the agency never indicated that either. Nor is there a claim that the lease between plaintiff and Crown was contrary to the purposes of the RAL listed in *N.J.S.A.* 40:55C–2. Instead, the defense to the allegations of unpaid rent was based on plaintiff's failure to obtain approval of JCRA pursuant to Article XL of the lease which stated "this lease is contingent upon such approval by the [JCRA]." While the counterclaim sought damages based essentially on defendant's payment of $30,000 on account of real estate taxes, they never demanded reimbursement for the base rent they had paid, including what they paid for their continued tenancy from May 1990 through February 1991.

■ The Redevelopment Agency Law does not require that a lease from a redeveloper to a user be contingent on the prior approval of the agency. We perceive nothing in that law conditioning the payment of rent between a redeveloper and a user of property in the redevelopment area, as long as the use is permitted by the plan.

■ When plaintiff opposed the motion for summary judgment, it was entitled to have its allegations deemed true and all inferences flowing therefrom to be made in its favor. If those allegations and the evidence offered to support them " 'could sustain a

judgment in favor of the non-moving party'" summary judgment would have to be denied due to a genuine dispute of fact. *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 538, 666 *A.*2d 146 (1995). In its amended complaint, plaintiff claimed the tenant was "estopped from denying its obligations under the Lease" because it operated the parking lot and paid the rent regularly. Defendants admitted the terms of the lease but denied liability under the lease because "plaintiff failed to satisfy a condition precedent under the Lease," that being the consent of the JCRA. Defendants raised several defenses, most noticeably that plaintiffs were equitably estopped from seeking the additional rent based on taxes because they failed to advise defendants of the extent of the taxes, thus breaching their covenant of good faith and fair dealing.

There is no dispute that plaintiff allowed defendants to operate a parking lot on the property and that defendants paid for that use and occupancy according to the rental agreements stated in the written lease, except for the additional rent called for by ARTICLE VII. Moreover, in the face of disclaiming liability on this allegedly void lease, the defendants relied on the viability of part of that lease in the fifth separate defense which asserts that plaintiff's claim should be decided by arbitration, pursuant to ARTICLE XXXIX of the lease.

If the lease is void *ab initio* as defendants claim, plaintiff can still recover under either a theory of unjust enrichment or quantum meruit. *See Hudson City Contracting Co. v. Jersey City Incinerator Auth.*, 17 *N.J.* 297, 309, 111 *A.*2d 385 (1955). The defendants cannot ignore their use and occupancy of the parking lot, and it can be inferred from the regular payment of $150,000 each year for five years that the arrangement was made in good faith on both sides. Defendants certainly benefitted from the continued operation of the parking lot business after the five years ended, and keeping all the profits without paying some fair rental to plaintiff would be unjust. Similarly, the rental that was paid during the original five years might not have been enough to provide a fair rate of return and all or some of the additional rent

based on taxes might be just. Those undecided issues are "genuine" and do not permit disposition summarily by motion. Discovery is warranted to develop more facts, and the extensive use of the property and the payment of a significant amount of rent require consideration by the fact finder. Summary judgment was premature.

Reversed and remanded for trial.